UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>CRUZ HERNANDEZ et al.,<br><br>        Defendants. | Case No. 2:19-cr-00117-SB-8<br><br><br>ORDER DENYING VELASQUEZ'S MOTION UNDER CRIMINAL RULE OF PROCEDURE 29 [DKT. NO. 2754] |

Defendant Edgard Velasquez is charged with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), and with committing a Violent Crime in Aid of Racketeering Activity (VICAR), 18 U.S.C. § 1959(a), arising from the murder of J.S.  At the close of the government's case, Velasquez moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the government's proof at trial constructively amended the indictment or, alternatively, resulted in a material variance from the charges returned by the grand jury.  Because the government's evidence did not alter the charged offenses or permit conviction on a factual basis materially different from that alleged in the indictment, the motion is denied.

I.

Velasquez is the alleged leader of the Fulton clique of the MS-13 gang.  The Fourth Superseding Indictment (FSI) charges him with RICO conspiracy (Count 1) and with the premeditated murder of J.S. on or about March 6, 2017 (Count 8).  Dkt. No. 1013 at 1–3, 14–16, 57.

In seeking the indictment, the government presented evidence to the grand jury through an FBI agent assigned to the investigation.  The agent testified that multiple cooperating witnesses identified Velasquez as the leader of the Fulton clique, a position that required him to authorize any planned homicide and

1

determine promotions based on participation in the murders.  Dkt. No. 2245 at 13–15, 58–59.  The agent also described surveillance footage and wiretap evidence reflecting Velasquez's leadership role within the clique.  *Id.* at 41–44, 65–69.  With respect to the J.S. murder, the agent relayed statements from cooperating witness CW-I that CW-I was present in the car with J.S. during the abduction and overheard codefendant Guzman call Velasquez to obtain permission to kill J.S.  *Id.* at 56–58.  The agent testified that the phone call was corroborated by call detail records.  *Id.* at 61, 67.  The grand jury also heard evidence that, after the murder, participants showed Velasquez photographs of J.S.'s body.  *Id.* at 59–60.  The grand jury thereafter returned the FSI.

Consistent with the evidence presented to the grand jury, the FSI alleges, among other things, that while transporting J.S. to the Angeles National Forest, Guzman informed Velasquez of the plan to kill J.S. and that Velasquez authorized the murder.  Dkt. No. 1013 at 23 (Overt Act No. 44).  At trial, however, the government did not rely on that evidence.  Instead, it presented testimony that Velasquez, as the leader of the Fulton clique, had authority over planned homicides and approved J.S.'s murder in advance and that Velasquez reviewed photographs of J.S.'s body and authorized promotions for those who participated in the killing.

After the government rested on May 29, 2026, Velasquez moved for a judgment of acquittal under Rule 29.  He argued that the government's proof constructively amended the indictment or resulted in a material variance because the government did not present to the petit jury the evidence of the authorization call that had been presented to the grand jury and referenced in the FSI.  *See* Fed. R. Crim. P. 29 (permitting defendant to move for acquittal at the close of the government's evidence).  Both parties thereafter submitted briefs on the motion. Dkt. Nos. 2753, 2754.

## II.

Velasquez's motion challenges the VICAR murder charge in Count 8 on the theory that a conviction would constitute a constructive amendment or, in the alternative, a prejudicial variance.  The motion fails on both grounds.

A constructive amendment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them."  *United States v. Soto-Barraza*, 947 F.3d 1111, 1118 (9th Cir. 2020) (cleaned up).  A variance, by contrast, occurs

when the evidence at trial proves facts materially different from those alleged in the indictment. *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002).[1]

No constructive amendment occurred here. The indictment charged that Velasquez authorized J.S.'s murder, and the government pursued that same theory at trial. Although the government did not present evidence of the specific authorization call described in Overt Act No. 44, its proof did not alter the elements of the offense or expand the conduct for which the jury could convict Velasquez. Put differently, the jury was not permitted to convict Velasquez on a basis not charged by the grand jury. *See Soto-Barraza*, 947 F.3d at 1119. Thus, Velasquez fails to show that any constructive amendment occurred. *See id.*

Nor did the evidence at trial prove facts materially varied from those alleged in the indictment. The indictment alleged that Velasquez was the clique's leader, possessed authority to order murders, approved J.S.'s murder in advance, reviewed photographs of the victim after the murder, and rewarded participants through promotions. Dkt. No. 1013 at 7, 13, 15, 24, 32. The government pursued that same theory at trial and relied on evidence that was materially consistent with the allegations in the indictment to prove Velasquez's involvement in J.S.'s murder. Thus, no material variance occurred. *See United States v. Omidi*, No. 23-1719, 2025 WL 212820, at *2 (9th Cir. Jan. 16, 2025) (finding no variance or constructive amendment where "the facts charged in the indictment and presented at trial were materially consistent; both placed [defendant] at the helm of the [criminal] scheme"); *cf. United States v. Miller*, 471 U.S. 130, 136 (1985) ("Convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.").

But even if the government's decision not to present evidence of the phone call at trial constituted a material difference, a variance only warrants relief if it affected the defendant's substantial rights. *United States v. Von Stoll*, 726 F.2d

---

[1] Velasquez cites *Russell v. United States*, 369 U.S. 749, 770 (1962), for the proposition that a constructive amendment occurs when a defendant is convicted on facts not presented to the grand jury. But the issue presented in *Russell* was whether an indictment returned by a grand jury was sufficiently specific "to apprise the defendant . . . of the nature of the accusation against him." *Id.* at 765. Velasquez does not appear to challenge the sufficiency of the indictment, and he does not dispute that the facts presented to the grand jury are consistent with the indictment's allegations. Nor does he identify any authority requiring the government to present the petit jury with all evidence presented to the grand jury.

584, 586 (9th Cir. 1984).  Velasquez makes no such showing.  The government simply elected to prove a subset of the conduct alleged in the indictment.  *See United States v. Bolzer*, 556 F.2d 948, 950 (9th Cir. 1977) (explaining that defendants could not be prejudiced by a variance as to one of several overt acts when the government could have proved its case based solely on the remaining alleged acts).  Velasquez does not identify any evidence or theory presented at trial that "prejudicially surprised" him.  *Miller*, 471 U.S. at 134–35 (no variance warranting relief where defendant was not "prejudicially surprised at trial" by the absence of proof on one theory); *United States v. Antonakeas*, 255 F.3d 714, 722 (9th Cir. 2001) (finding no variance where defendant "could anticipate the evidence that would be presented at trial" because the evidence and theories "covered the facts and time frame alleged in his indictment").[2]

In sum, Velasquez fails to establish that Count 8 was constructively amended or that any variance prejudiced his substantial rights.  His motion for acquittal on that charge is therefore denied.

Date: June 5, 2026

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

[2] Velasquez also asserts that the government told the grand jury that CW-I's willingness to testify was the reason it sought murder charges against him years after the events in question.  The record does not support that characterization.  The agent testified only that investigators could not establish the nature of the call between Guzman and Velasquez until CW-I agreed to testify.  Dkt. No. 2245 at 61.  In any event, Velasquez does not explain the significance of the point.  To the extent he means to argue that the grand jury would not have indicted absent CW-I's testimony, the argument is undeveloped and does not establish a constructive amendment or prejudicial variance.